

**LAZARE POTTER GLAZER & MOYLE LLP**

747 THIRD AVE, FLOOR 16
NEW YORK, NEW YORK 10017
T: 212.758.9300
F: 212.888.0919
LPGMLAW.COM

Direct: (212) 784-3291
yglazer@lpgmlaw.com

May 1, 2026

*Via* ECF

Honorable Leda Dunn Wettre
United States District Court, District of New Jersey

      *Re:*    25 CV 17075 (JXN) (LDW)
            *Massy, LLC v. Northfield Insurance Company*

Dear Judge Wettre:

This firm represents defendant Northfield Insurance Company ("Northfield") in the above captioned case. I write this letter seeking judicial intervention in connection with a discovery dispute that, despite good faith attempts to resolve, remains outstanding. Northfield has sent multiple deficiency letters and advised counsel by email dated April 29, 2026 that if the tax returns were not produced, it would be seeking judicial intervention. Counsel confirmed via email today that it would not be producing the tax returns.

During our last conference, I communicated to the Court that I had identified discovery deficiencies to Plaintiff's counsel to which no response had been provided. Following that conference, Plaintiff purported to remedy those deficiencies, but other than providing his client's executed interrogatory certification, no further or additional responsive documents were provided. Counsel claims that despite due diligence, his client has no additional responsive documents. With the exception of the tax returns discussed below, I will take counsel on his word, but should it be revealed during his client's deposition that additional responsive documents in fact exist, Northfield reserves the right to re-depose his client, at Plaintiff's expense.

The issue at hand is the production of Plaintiff's tax returns. As the Court may remember, during the conference Plaintiff's counsel confirmed that so long as they could be produced pursuant to a confidentiality agreement, the tax returns would be produced. Now, however, Plaintiff refuses to provide the tax returns, even under a confidentiality agreement, claiming the demand for same is "overlybroad and intrusive."

The Northfield Policy provides coverage for Business Income Rental Value ("BI"). Plaintiff has made a BI claim in the amount of $81,126. The Policy defines "Rental Value" as

  **a.** *Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and*

  **b.** *Continuing normal operating expenses incurred in connection with that premises, including:*

  **(1)** *Payroll; and*
  **(2)** *The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.*

The Policy then provides as follows:

> *We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. . . .*

In other words, Plaintiff is only entitled to BI for an actual loss of business income it sustained due to the necessary suspension of its operations during the "period of restoration". Prior to commencing the lawsuit, Plaintiff claimed to have four tenants, but only provided two leases. Northfield determined that it should take one month to make the necessary repairs to the premises, and gave the insured the benefit of the doubt that all four tenants would be forced to move out for repairs and thus not pay rent for that one month period. The amount claimed by Plaintiff ($81,126) would be for six months. Thus, in order to recover, Plaintiff must show 1) what net income it would have earned had there been no loss; and 2) the actual business income loss resulting from the loss. There would also have to be a determination of which expenses continued as a result of the loss. This is a relatively simply accounting calculation. Notably, Plaintiff has not provided any documentation to support that *any* repairs have been made – via signed contracts, proof of payments or photographs of repairs – which would require all four tenants to move out of the premises for six months, and not pay rent.

Typically, the way BI rental losses are calculated, the insured provides its rent roll and profit and loss statements which show rent paid for a time period prior to the loss and rents not paid following the loss, to support its claim. In response to the demand for these documents, counsel responded "[n]o additional profit and loss statements, lease agreements, rent rolls, or supporting documentation exist within Plaintiff's files at this time." Plaintiff has not provided any proof of payment of rent for the two tenants with leases, and only one receipt each, for purported February 2023 rent, for the two tenants for which no leases were provided.

The date of loss was October 2, 2022. Northfield thus requested full and complete copies of Plaintiff's federal tax returns for 2021, 2022 and 2023, which would reflect the rental income received by Plaintiff for the year prior to the loss, the year of the loss, and the year following the

loss, as well as expenses incurred related to same.  The tax returns should show a loss of income for the months following the loss.

Particularly because Plaintiff claims it has no other information concerning rental income at all, including but not limited to leases for two of the four tenants, any proof of payment other than the February 2023 rent receipts for two of the four tenants, no rent rolls, etc., the tax returns are the best source of information, they are both relevant and material to this litigation, and should be produced.  Northfield has already agreed that they can be provided pursuant to a confidentiality agreement, and there is no valid basis to withhold same.

Thus, unless Plaintiff voluntarily withdraws its BI claim with prejudice, Northfield respectfully requests that the Court order Plaintiff to provide full and complete copies of its federal tax returns for the years 2021-2023.

Thank you for your assistance in this regard.

Very truly yours

*Yale Glazer*

Yale Glazer

cc:    Alfred Acquaviva, II, Esq.
       *via* ECF